Marks *a.* Reynolds.

## MARKS *a.* REYNOLDS.

*Supreme Court, Eighth District ; General Term, May,* 1861.

CONFESSION OF JUDGMENT.—STATEMENT OF CONTINGENT LIABIL-
ITY.—CONFESSION TO TRUSTEE.

A statement of judgment by confession to secure the plaintiff's contingent liability
as indorser for the accommodation of the defendant, is sufficient if it describes
the notes, naming the respective parties, the dates, amounts, and times and
places of payment. The consideration need not be stated, nor the fact that the
notes had been discounted,[*] this fact being inferable.

Under the provision of § 382 of the Code,—that judgment by confession may be
entered for money due or to become due, or to secure any person against con-
tingent liability,—the person who may be secured is the plaintiff in the judg-
ment. A confession of judgment to A. to secure him, and as trustee for B. to
secure a contingent liability assumed by B., is illegal, even though made in good
faith in respect to the latter liability, as against subsequent creditors.

---

[*] In the case of DALY *a.* MATTHEWS (*Supreme Ct., III. Dist., Sp. T., Nov.*, 1860), a
motion was made by a subsequent mortgagee and purchaser, to set aside the judg-
ment entered by confession, on the ground of the insufficiency of the statement.
The statement was in the following form : Judgment is hereby confessed in this
cause for the sum of, &c., and I hereby authorize the plaintiff or his attorney to enter
judgment for the above sum, together with costs of this suit, in the clerk's office.
of the county of Saratoga, and in this court. This confession is made for a debt
justly due the plaintiff herein from me, arising upon the following facts, viz. : a
promissory note made by me and Terence Mathews as surety for me, the defend-
ant, to the plaintiff, for the sum of, &c., dated, &c., and payable one year from the
date thereof with interest ; said note was given for money had and received by me
of the said plaintiff at my request ; and also for the sum of, &c., of money had and
received by me at different times from said plaintiff, at my request, for which no
note or security or writing was taken from me by the said plaintiff ; also, for the
sum of, &c., being a book account for goods, wares, merchandise, groceries, and
provisions, heretofore sold and delivered to me at my request, by the said plain-
tiff, and for which he had not received pay.

There was no indorsement upon the statement, as required by section 384 of
the Code ; but the judgment was otherwise duly docketed in the Saratoga county
clerk's office.

*L. B. Pike,* for the motion.

*P. W. Bishop,* opposed.

Motion to vacate a judgment entered by confession.

One Silas H. Marks had obtained from the defendant a judgment upon confession, without action, for $8,345, to secure him-

BOCKES, J.—The motion is made by William Bennett, a subsequent mortgagee and purchaser on mortgage foreclosure of the real estate on which the judgment is an apparent lien.

The statement was filed and judgment was docketed on the 30th of August, 1854, for $233.70, with costs. Through the omission of the clerk, no indorsement of judgment was made on the statement, as required by section 384 of the Code of Procedure.

This defect, however, could now be supplied, and would be as matter of course, if the motion depended on that alone, by the entry of an order directing the indorsement to be made *nunc pro tunc.* ·

The judgment having been duly docketed, the omission to make the indorsement cannot have affected the substantial rights of any party.

Section 176 of the Code was intended to cover errors and defects of this nature.

It is urged that the judgment is void, inasmuch as the statement on which the judgment was entered is wholly insufficient.

The judgment embraces the amount of a promissory note for $100. Also $19.70, for money had and received, and the further sum of $108.09, book account.

As regards the note, it is alleged in the statement to have been given "*for money had and received,*" without stating the amount, time, or place, or whether on one or on several occasions, or indeed any of the facts out of which the indebtedness arose, except the mere fact that the note was for money had and received.

As regards the $19.70, the statement is equally indefinite. The language is, "*also for $19.70 of money had and received by me at different times.*" No particulars, as to times, places, or amounts are given, nor any of the circumstances showing how the liability for money had and received accrued.

And as regards the $108.09, the statement is, that such sum was "*book account for goods, wares, merchandise, groceries, and provisions theretofore sold and delivered.*" But no time, place, or circumstance of sale or delivery of any item or article is given.

The current of authority is clearly and emphatically against the sufficiency of the statement. Section 383 requires it to contain the facts out of which the indebtedness arose. The object in view, and which must be preserved in its integrity, was to protect other persons interested in the just application of the debtor's property to the payment of his debts, and to that end the parties were required to spread on the record, concisely, but with particularity and precision, the origin of the indebtedness for which the judgment was confessed. The fairness of the judgment could then be readily investigated and its good faith determined. The argument is exhausted in the various cases in which the question has been before the court.

To some extent they may be regarded as conflicting. For the purpose of more easy reference they are here collected, nearly in the order in which they have appeared in the reports, and without arrangement or classification.

18 *How.· Pr.*, 23, 89 ; 17 *Ib.*, 363, 574 ; 15 *Ib.*, 41, 67, 228 ; 14 *Ib.*, 20 ; 13 *Ib.*, 21, 142, 418, 472 ; 12 *Ib.*, 141, 410 ; 11 *Ib.*, 503 ; 10 *Ib.*, 494 ; 9 *Ib.*, 61, 64 ; 8 *Ib.*, 40 ; 7 *Ib.*, 62, 449, 458 ; 5 *Ib.*, 381 ; 3 *Abbotts' Pr.*, 375 ; 7 *Ib.*, 309 (S. C., 1 *Bosw.*,

self against contingent liabilities as the indorser of notes made by Reynolds, amounting to $4,450; and "also, as was set forth in the statement authorizing the judgment, for the purpose of securing the said Silas Marks, as trustee, in behalf of John Van

659); 21 *Barb.*, 85, 152; 23 *Ib.*, 652 (S. C., 13 *How. Pr.*, 418); 30 *Barb.*, 117, 185 (S. C., 17 *How. Pr.*, 363); 30 *Barb.*, 325; 31 *Ib.*, 36 (S. C., 17 *How. Pr.*, 574); 12 *N. Y.*, 215; 9 *Ib.*, 73; 16 *Ib.*, 562; 17 *Ib.*, 9 (S. C., 6 *Abbotts' Pr.*, 357); 20 *N. Y.*, 448.

The cases of Freligh *a*. Brink (16 *How. Pr.*, 272), and Schoolcraft *a*. Thompson (7 *Ib.*, 446), were reversed on appeal. (18 *Ib.*, 89; 9 *Ib.*, 61.)

So, too, such of the cases cited, as hold that the statement is sufficient if it set out a promissory note, without giving the consideration, are overruled. (12 *N. Y.*, 215; 17 *N. Y.* (3 *Smith*), 9; S. C., 6 *Abbotts' Pr.*, 357.) It is well further to remark, that several of the cases cited have been questioned. (See 15 *How. Pr.*, 41 : *Ib.*, 67; 11 *Ib.*, 503.)

But it is the settled rule that the consideration of the indebtedness must be set out in the statement, and the question on this motion is, whether it is enough simply to say that the origin of the indebtedness was *money had and received, and book account for goods, wares, and merchandise sold and delivered*. It has been repeatedly held that this was not sufficient.

In Rae *a*. Lawser (9 *Abbotts' Pr.*, 380; S. C., 18 *How. Pr.*, 23), the statement was said to be defective, for the reason that the time or times, when the moneys were loaned and the goods sold and delivered, were not stated.

· In Claflin *a*. Sanger (9 *Abbotts' Pr.*, 214; S. C., 17 *How. Pr.*, 574), the consideration of the indebtedness was stated to have been for goods, wares, and merchandise, theretofore purchased, &c. : the statement was held insufficient.

In Gandall *a*. Finn (13 *How. Pr.*, 418; S. C., 23 *Barb.*, 652), the statement was held insufficient, which stated the indebtedness to have arisen on account for goods, wares, merchandise, and property sold and delivered.

In Stebbins *a*. The E. Society, &c., of Rochester (12 *How. Pr.*, 410), the statement was held insufficient. The indebtedness was alleged to have accrued for money lent and advanced.

The last two cases were questioned in Mott *a*. Davis (15 *How. Pr.*, 67).

So it was held in Boyden *a*. Johnson (11 *How. Pr.*, 503), that a judgment on confession which stated the indebtedness to be for goods sold and delivered, and upon an accounting, was entirely insufficient. The following cases are to the point: 10 *Ib.*, 494; 9 *Ib.*, 64, 61; 3 *Abbotts' Pr.*, 375; 21 *Barb.*, 152; 27 *Ib.*, 185; 30 *Ib.*, 325; 23 *Ib.*, 652; 12 *N. Y.*, 215; 17 *Ib.*, 9. In the last case cited it was held in the Court of Appeals that the statement was insufficient which alleged the indebtedness to have arisen on a "settlement of accounts." Judge Selden remarks, something at least should be stated as to the nature of the account and the time when it accrued.

I should not have deemed it necessary to be thus minute in the examination of these numerous cases, were it not that in a later case in the Court of Appeals (Lanning *a*. Carpenter, 20 *N. Y.*, 447), a statement which alleged that the indebtedness was "*for borrowed money*" was held sufficient. (See Freligh *a*. Brink, 18 *How. Pr.*, 89.)

The language of the confession in Lanning *a*. Carpenter is perhaps a trifle more

Horn and George R. Keep, against contingent liability arising out of the following facts." The statement then set forth that Van Horn and Keep had indorsed for Reynolds certain promissory notes, which were particularly specified, amounting to

---

definite than in the cases cited, in which the statements were held insufficient. But this case cannot be deemed to overrule any other cases than those in which the language of the statement is the same in substance and effect, especially as no intimation is given of an intention to establish any new rule, or even to limit or qualify any already established.

In case of borrowed money the decisions require that the statement should give, specifically or by fair implication, the amount or amounts borrowed, and also the time or times when borrowed, with some degree of definiteness. The same rule would apply to a confession of judgment for money had and received. If for money paid, the time, amount, and to and for whom paid; and if on different occasions, the times and amounts with reasonable certainty should be stated. If for goods, wares, merchandise, or property sold, the kind or general description of property should be given, with the time of sale; or if matter of book account, the period during which the indebtedness accrued.

In the case now under consideration, the statement tested by these rules is radically defective and insufficient, and the judgment entered thereon must be deemed unauthorized and void.

Nor can it be made good by amendment as against judgment-creditors of the debtor, or against any one entitled to take advantage of the defect. The defect is more than an irregularity. The omission renders the judgment void as to other judgment-creditors. (17 N. Y., 9; 12 Ib., 215; 30 Barb., 185, 325, 117; 13 How. Pr., 142, 472.) In the last case cited, it was said that a judgment entered by confession upon an insufficient statement was without legal authority and void, and that the court had no right to authorize a new judgment to be entered under the form of an amendment, which should take priority over other judgments subsequently recovered.

But the counter-affidavits read on this motion make no approach towards supplying the defect in the statement; hence there is no ground on which to ask for an amendment.

It is urged that Mr. Bennett has no standing in court, on this motion, inasmuch as he is not shown to be a judgment-creditor of the defendant in the judgment.

Mr. Bennett was a mortgagee of the premises on which the judgment was an apparent lien. He foreclosed his mortgage and became a purchaser at the foreclosure-sale, and stands in the position of a subsequent purchaser of and from the judgment-debtor.

It has been held repeatedly, that the purpose and policy of section 383 of the Code of Procedure, were the same as that of the act of 1818, regulating confession of judgment.

In Dunham a. Waterman (17 N. Y., 9; S. C., 6 Abbotts' Pr., 357) it was said, that although the Code does not in terms enact, as was done by the act of 1818, that a judgment confessed without a compliance with its provisions shall be deemed and adjudged fraudulent in respect to other bona-fide judgment-creditors, yet, considering the object in view, it was plain that such must be its meaning. This rule of construction embraces bona-fide purchasers, as well as judgment-cred-

$3,335; and added, " also, for the purpose of securing the said Silas H. Marks, as trustee in behalf of Augustus Keep and George R. Keep, against contingent liabilities," &c., then setting forth that the Keeps indorsed for Reynolds a note specified,

---

itors, inasmuch as both classes of persons are specified in the act, as to whom the judgment shall be adjudged fraudulent.

That act provided that judgments entered by confession without a compliance with its items should be " taken, deemed, and adjudged fraudulent, as respects any other *bona-fide* judgment-creditors, and every *bona-fide* purchaser for valuable consideration of any lands bound or affected by such judgment." In James *a.* Johnson (6 *Johns. Ch.*, 417) mortgage-creditors were deemed to be *bona-fide* purchasers within the provision of the act. The case was afterwards considered in the Court of Errors (2 *Cow.*, 240), when it seems there was a difference of opinion upon the question.

Judge Woodworth remarked (page 290), that he thought mortgagees were to be deemed purchasers ; that the reason and spirit of the act protected mortgagees as well as subsequent judgment-creditors.

The learned judge also referred to the statute of 27 *Eliz.*, respecting conveyances made to defraud purchasers, under which it was held that a mortgagee was a purchaser.

Judge Savage, however, said (page 314) that in his judgment the Legislature did not contemplate a mortgage-creditor by the terms *bona-fide* purchaser.

The strength of the argument in this case, both in the Supreme Court and in the Court of Errors, is in favor of regarding a mortgagee as a purchaser within the purview of the act. Nor is this construction weakened by the case of Seaving *a.* Brinkerhoff (5 *Johns. Ch.*, 329), for the chancellor there deems the term purchaser to embrace those who take " beneficially, and for a valuable consideration, on their own account." It was held, also, in White *a.* Williams (1 *Paige*, 502, 8), that an assignee of a judgment could claim the benefits of this statute ; and further, that a purchaser under judgment was entitled to all the rights which a judgment-creditor could have.

In this case, however, Mr. Bennett, being the purchaser on mortgage-sale under his mortgage, is, by the strictest possible construction, a purchaser.

But we are not without further authority on this question. Judge Harris remarked in Bonnell *a.* Henry (13 *How. Pr.*, 142, on page 145), as follows : " Nor do I understand that the right to have the illegal judgment removed, is confined to a judgment-creditor," but he did not assume in that case to decide that a mortgagee or purchaser could move to set aside the judgment, the same as judgment-creditors.

The same subject came under discussion in Norris *a.* Denton (30 *Barb.*, 117). The plaintiff's counsel insisted that none but judgment-creditors could attack a judgment entered by confession, on the ground of the insufficiency of the statement. But it was decided by the court at general term, that the right to set aside or attack a void judgment thus entered was not limited to judgment-creditors; and further, that a judgment so entered upon confession upon a defective statement was to be deemed fraudulent and void as against the creditors of the judgment-debtor, and also as against grantees and mortgagees of premises upon which such judgment was an apparent lien. In this case, the court say that a

amounting to $560. The statement further declared, that the judgment and confession were to be held by Marks in his own right, as to the contingent liabilities assumed by him, &c.; and to be further held by him in the right and behalf of Van Horn and Keep, as to the contingent liabilities assumed by them as indorsers, &c.; and to be further held by him in the right and behalf of Augustus Keep and George R. Keep, as to the contingent liabilities assumed by them.

The statement was verified, and Marks agreed, in writing, to take and hold the judgment upon the terms, and for the purposes expressed. The judgment was docketed August 19th, 1858. In an action brought against the same defendant, Reynolds, by Mrs. L. M. Wright, judgment in her favor was recovered, and was docketed November 6th, 1858.

Counsel for Mrs. Wright moved, at a special term of the court, to have the former judgment set aside. The motion was denied, the following opinion being rendered.

MARVIN, J.—The counsel for Mrs. Wright made several objections to the sufficiency of the statement upon which the judgment to Marks was entered; but, in my opinion, none of them

grantee or mortgagee of premises upon which such judgment is a lien must have the same right to attack it as a judgment-creditor. So, it was held in Bridenbecker *a.* Mason (16 *How. Pr.*, 203), that when a judgment is fraudulent, or is invalid by reason of some substantial defect, it will be set aside on application of any party interested in impeaching it. (See, also, Kendall *a.* Hodgins, 1 *Bosw*, 659; S. C., 7 *Abbotts' Pr.*, 309, and cases there cited.)*

These cases are well based on principle. There can be no good reason for extending, by construction, the right to set aside a fraudulent or unauthorized judgment to a judgment-creditor, and denying such right to a purchaser or mortgagee of property on which the judgment is an apparent lien. The judgment entered upon an insufficient statement is void, and should be so adjudged at the instance of any person injuriously affected by it. In this case the judgment under the authorities must be held unauthorized and void. Mr. Bennett received his mortgage in ignorance of the judgment, and, on foreclosure, became the purchaser of the equity of redemption, consequently occupies the place of a *bona-fide* purchaser.

But whether purchaser or mortgagee, he may invoke the aid of the court to protect him in his rights by the removal of an apparent but invalid lien on his property.

An order must be entered vacating and setting aside the judgment and all subsequent proceedings, as to the premises owned by Mr. Bennett, and described in the moving papers.

* Compare, also, Neusbaum *a.* Keim, 7 *Abbotts' Pr.*, 23; Hammond *a.* Bush, 8 *Ib.*, 152.

were well founded, unless the one arising upon the facts appearing from the above statement is of that character.

The question is, may a judgment be confessed to one person in trust for another, the trustee and the trust being created and declared in the written statement authorizing the judgment? By the Code, a judgment may be confessed " to secure any person against contingent liability on behalf of the defendant," in the manner prescribed. There must be a statement in writing, signed by the defendant, and verified. ."If it be for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting the liability, and must show that the sum confessed therefor does not exceed the same." (§§ 382, 383.)

The decision of the question must, I think, depend upon the construction to be given to these provisions of the Code. I am not aware that, prior to the Code, there was any thing in our law prohibiting the confession of a judgment to one person, which should be for the benefit of another. Our statute (2 *Rev. Stat.*, 137, § 1) makes void a " decree or judgment suffered, with intent to hinder, delay, or defraud creditors or other persons of their lawful suits," &c. This statute does not affect the question. Prior to the Code the action was required to be in the name of the party *legally* interested. In actions upon contracts, other than commercial paper, the action must have been in the name of the party to the contract, though he may have assigned it, and the recovery would be for the benefit of the assignee. Now the action is to be prosecuted in the name of the real party in interest, except as provided in sections 113, 111. By section 113, executors, administrators, and certain trustees, and persons authorized by statute, may sue in their own names; and a person with whom or in whose name a contract is made, for the benefit of another, is included.

These principles and provisions do not embrace the case; they relate to parties to an action: but it is proper to consider the state of the general law touching parties to actions, in giving constructions to the provisions relating to the confession of judgments, without action; and, in doing so, we see that there is nothing in the law, in principle, inconsistent with the confession of a judgment to one person for the benefit of another. The Code authorizes a judgment by confession to be entered, " to

secure any person against contingent liability on behalf of the defendant." This authority is general—to secure "any person." It does not declare that the judgment shall be confessed to the person to be secured, and not to any other person for his benefit. The third subdivision of the next section, however, declares that "if it (the judgment) be for the purpose of securing the plaintiff against a contingent liability, it (the statement) must state concisely the facts constituting the liability, and must show that the sum confessed therefor did not exceed the same." Here the word *plaintiff* is used, "for the purpose of securing the plaintiff against a contingent liability." If we give this clause a literal and controlling construction, it will, I think, follow that those parts of the judgment intended to secure Van Horn and Keep, and Keep & Keep, against contingent liabilities, cannot be sustained. Regarding Marks as the sole plaintiff, it cannot be said that he had incurred any contingent liability upon the notes not indorsed by him.

I am inclined to think, in view of the whole statute, that a more liberal construction should be given. In the present case three classes of persons incurred contingent liabilities on behalf of the defendant; and a judgment was confessed to one of them, to secure him against his contingent liabilities, and also to secure each of the other classes of persons for their contingent liabilities, the person to whom the judgment was confessed consenting to act as the trustee of the others. The intent and spirit of the statute have been complied with; full information has been given; subsequent judgment-creditors have not been injured. If, instead of one judgment, there had been three, no question could be raised. Why, then, under such circumstances, require three judgments instead of one? It was suggested upon the argument that the word "plaintiff" ought to be construed as meaning the persons for the purpose of securing whom the judgment was confessed; or, by referring to the previous section, which contains the authority to enter judgment by confession, read the clause in question, "If the judgment be for the purpose of securing *any person* against a contingent liability," &c. In other words, that the word *plaintiff*, as here used, is simply a substitute for "any person," as used in the previous section; and I am inclined to think that such construction should be given. It can hardly be claimed that it was intended, by the

use of the word *plaintiff*, to abrogate the law previously existing, which permitted the confession of judgment to one person for the benefit of another.

If I am wrong in the views here expressed, it will not follow that the entire judgment is void as to Mrs. Wright. It is valid so far as the contingent liabilities of Marks are concerned. (McKee. *a.* Tyson, 10 *Abbotts' Pr.*, 392.) I have concluded, upon the whole, to deny the motion, without costs.

From this order the moving party appealed.

*C. Thayer*, for the appellant.

*Mr. Lamont*, for the respondent.

By the Court.*—Davis, J.—The judgment sought to be set aside was confessed to Marks, the plaintiff, to secure him against a contingent liability as indorser for the defendant, amounting to $4,450; and also to secure him as trustee for John Van Horn and George R. Keep, for contingent liabilities arising upon their indorsements for said Reynolds, to the amount of $3,335; and as trustee for Augustus Keep and George R. Keep to secure them for contingent liabilities as such indorsers to the amount of $560.

The points made by the appellant's counsel are, *first*, that the statement of the nature and character of the liability is insufficient; and *second*, that a judgment cannot be confessed to one party as trustee for another to secure the latter against contingent liabilities, or for any indebtedness.

The special term, in my opinion, came to a correct conclusion as to the sufficiency of the statement. The contingent liabilities are described as arising upon certain specified notes made by Reynolds, and indorsed by plaintiff and by the other persons named. These notes are described by dates, amounts, when and where payable, and by whom made and indorsed. The liability upon them intended to be secured is a contingent one, as accommodation indorser; and of course if the particular notes have had no inception, or are not outstanding, or the indorser shall never be charged upon them, there is nothing se-

---

* Present, Marvin, P. J., and Davis and Grover, JJ.

cured by the judgment. It was not necessary, in my opinion, to state the consideration of the notes, nor the fact that they had been discounted; although the latter fact is fairly inferable from what is stated. The creditors of Reynolds are fully informed of the nature and extent of the contingent liability. The facts stated put them upon inquiry, which, if followed, enables them definitely to ascertain the exact amount of the contingent liability that may at any time ripen into an actual one; and in my opinion are a sufficient compliance with the requirements of the Code.

The confession and judgment, so far as the plaintiff's own liability is secured, may be sustained even if the court shall conclude that they are void as to the other amounts. (McKee *a.* Tyson, 10 *Abbotts' Pr.*, 392; Hoppock *a.* Donaldson, 12 *How. Pr.*, 141.)

The question remaining to be determined is, whether a judgment may be confessed, under the Code, to one person in trust for another, the trustee and the trust being created and declared by the defendant in the written statement. This question is simply one of power under the provisions of the Code. I have studied those provisions in the light of the learned judge at special term, and am not able to concur in his conclusion.

The Code provides that "a judgment by confession may be entered without action either for money due or to become due, or to secure *any person* against contingent liability on behalf of the defendant, or both, in the manner prescribed by this chapter." (§ 382.)

"A statement in writing must be made, signed by the defendant, and verified by his oath to the following effect . . . . .

"3d. If it be for the purpose of securing *the plaintiff* against a contingent liability, it must state concisely the facts constituting the liability, and must show that the sum confessed therefor does not exceed the same." (§ 383.)

In my judgment, "*the person*" who may be secured against a contingent liability must be "*the plaintiff*," in whose favor the judgment is confessed. These terms, as used in the two sections, are convertible and synonymous. The intention was to give power to the defendant by a confession *to the party* who had incurred such contingent liability on his behalf, to secure him to the amount of such liability; and not to authorize the

creation of trusts through which, by the intervention of a trustee as plaintiff, all the contingent liabilities of a debtor might be aggregated and secured. Our system does not favor the creation of trusts except for certain specified and limited purposes, among which I do not think the trust in question is to be found. Besides, the establishment of such trusts seems to be obnoxious to serious objections. It of course includes the right of the debtor to select his own trustee; and if he may confess such a judgment for his indebtedness or contingent liabilities, he may, of course, choose a trustee most favorable to himself, without consulting, or perhaps in defiance of, the wishes of his creditor, and thus gain all the lenity which a friendly trustee would have it in his power to show him. If the judgment be valid *eo instanti* upon its confession and entry, it of course merges the existing indebtedness; and probably anticipates and prevents any future judgment upon the same contingent liability. So that a pressing creditor may suddenly find the note of his debtor on which he is seeking payment, or which he desires to turn out in payment of his own debts, or to hypothecate for his own liabilities, merged in a judgment confessed to his trustee whom he has not chosen, and for whose kindly offices he has no desire. This must be the effect of the existence of such a power in the debtor, unless it be also held that the validity of such a confession and judgment depends upon the assent of the creditor or his subsequent ratification. But there is no way provided in which this assent is to appear; and hence such judgments would be left open to controversy, whether such assent was given, or such ratification made,—subjects upon which contending creditors might litigate interminably upon questions of fact *dehors* the record, and resting in parol and loose acts and declarations. Besides, these judgments, if thus themselves contingent, would encumber the records and dockets of the court with invalid judgments not assented to nor ratified, to the serious prejudice of the business community. If such a judgment, to which there has been no concurrent or subsequent assent of the beneficiary, is to be valid till repudiated, at what time will it cease to be a lien? or when must the repudiation or ratification be announced? When ratified, will the lien relate to the time of docketing, or of the ratification? And what effect shall be given to such a judgment as against others recovered while it is thus inchoate?

The difficulties that surround the right to confess judgments to trustees seem to me embarrassing and insuperable. I have no doubt the judgment in this case is just and equitable, and was confessed in good faith, and ought to be sustained, if the power to confess such a judgment exists; but to establish such power seems to me to open a door to mischiefs prejudicial to the best interests of community and liable to great abuse; and I do not think the Legislature have done or intended to do it. In my opinion, the order appealed from should be reversed, and the judgment in question should be declared valid only as to the contingent liability of Marks; and the residue invalid as to Mrs. Wright's judgment, and postponed thereto.

GROVER, J., concurred.   MARVIN, P. J., dissented.